IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANNY TRAN,

    **Plaintiff,**

    v.                                                 CASE NO. 24-3199-JWL

DARCIE HOLTHAUS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Danny Tran is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). Plaintiff alleges that on August 1, 2023, he was transferred to EDCF after being diagnosed with cancer because EDCF is the only facility with an oncology unit to treat cancer. (Doc. 1, at 2.) Plaintiff alleges that he was housed in the infirmary, was a cancer patient, and is asthmatic. *Id*.

As Count I, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment. *Id*. at 3. Plaintiff alleges that from August 2023 to April 2024, Defendants allowed the misuse of pepper spray in the infirmary at EDCF. *Id*. Plaintiff alleges that it continued from May 2024 to the present. *Id*. He alleges that he "suffered from coughing, burning throat, runny

nose, sneezing and uncontrollable eye watering in addition to the side effects of chemotherapy and radiation." *Id*.

Plaintiff alleges that the infirmary has no wings or halls and the inmates are only separated by rooms. *Id*. at 10. Plaintiff alleges that during August and September of 2023, as a result of John Does pepper spraying other inmates in the infirmary who are in isolated cells, the porters had to prop the emergency door open and use an industrial fan to push the pepper spray out. *Id*. Plaintiff alleges that when this happens, he is usually instructed to return to his room and is placed on lockdown. He claims that although sheets are rolled up and taped/wedged in front of the base of the door to help mitigate exposure, "it didn't." *Id*. at 10–11. Plaintiff alleges that during his chemotherapy treatments he was "tethered to his infusion" and his access to outside air was very limited. *Id*. at 11. Plaintiff alleges that during his treatment Defendant John Does continued to use pepper spray and the exposure exacerbated the side effects of chemotherapy and radiation. *Id*. at 11–12. Plaintiff's grievances were denied and Defendant Johnson told Plaintiff that Dr. Gordon C. Harrod stated that the pepper spray did not worsen Plaintiff's medical conditions. *Id*. at 12. Plaintiff alleges that Defendant Johnson also stated that Plaintiff could seek out medical staff if pepper spray imposed intolerable effects. *Id*. Plaintiff alleges that Dr. Harrod told Plaintiff that Johnson had "twisted his words" in her response. *Id*.

Plaintiff alleges that he finished his chemotherapy on March 15, 2024, and was awaiting surgery. *Id*. at 14. Plaintiff alleges that on April 17, 2024, "the facility" retaliated against him for filing grievances by removing him from the infirmary. *Id*. Plaintiff alleges that he asked medical staff to advocate for him and he was moved back to the infirmary on May 28, 2024. *Id*. Plaintiff alleges that when he was recovering from surgery the John Does continued to pepper spray other inmates in the infirmary. *Id*. at 15–16.

As Count II, Plaintiff alleges that he was denied court access at EDCF. *Id*. at 3. Plaintiff alleges that from September 2023 to April 2024, Defendants restricted his law library attendance and failed to issue him a law library tablet while housed in the infirmary. *Id*. Plaintiff alleges that he "drafted handwritten motions with outdated caselaw while suffering from neuropathy" and had to "argue timeliness as prison officials delayed months mailing them out." *Id*. Plaintiff acknowledges that he was provided with limited law library access while in general population and while housed in the infirmary there was a "delivery system." *Id*. at 17–20.

Plaintiff names as defendants the Secretary of Corrections Designee, the EDCF Warden, two EDCF Unit Team Managers, two EDCF staff in Corrections Classification, an EDCF Activities Specialist, an EDCF Corrections Major, and six EDCF Corrections Officers. Plaintiff seeks declaratory relief, compensatory and punitive damages, and injunctive relief in the form of an order prohibiting Defendants from using pepper spray in the infirmary and requiring them to provide court access. *Id*. at 5.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

4

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. Eighth Amendment

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions

may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiff attaches an affidavit to his Complaint in which he declares that CO Channell used pepper spray in the infirmary on seven different days between December 29, 2023 and March 8, 2024. (Doc. 1–17, at 1.) Plaintiff also declares that John/Jane Doe officers used pepper spray in the infirmary on eleven different days between February 24, 2024 and October 31, 2024. *Id*. Plaintiff also attaches UTM Johnson's response to his grievance, which provides:

> On 01/17/2024 I received a grievance from you regarding the use of pepper spray in the infirmary and how it affects your asthma and may aggravate your cancer.
>
> I investigated this matter and reached out to Dr. Harrod. Per Dr. Harrod the use of chemical agents (pepper spray) does not affect your cancer. Unfortunately, chemical agent is sometimes necessary to be used to stop actions of residents while they are housed in the infirmary and is authorized by IMPP 12-111.
>
> In the event you are having a medical emergency due to the use of chemical agents (pepper spray), I would recommend that you alert the officer or a nurse, so you may receive immediate medical care.

(Doc. 1–2, at 9.)

In *Davis v. Brown*, an inmate with asthma brought a civil rights action claiming that staff refused his request to place a sign on his cell door indicating that staff should remove him from the area before using pepper spray. *Davis v. Brown*, 556 F. App'x 87, 88 (3rd Cir. 2014). The court held that:

> Davis did not show that the defendants' involvement in the matter consisted of anything more than reviewing his grievance and deferring to the judgment of medical personnel. Davis did not allege or establish that either Administrator Brown or Warden Bledsoe had actual knowledge that prison health staff were mistreating his condition by failing to address his repeated exposure to pepper spray. In addition, Davis did not show through competent medical evidence that his asthma condition was so serious that he could never be near the use of pepper spray, or that he risked serious damage to his future health. . . . [Plaintiff's

7

> medical records] show that, after Davis' second asthma attack was treated, he was sent to the recreation yard until the spray in the SMU dispersed. Medical staff did not recommend any modification to his assignment in the SMU. Following treatment for his third attack, Davis was released back to his housing unit with no restrictions.

*Id*. at 90–91. The court in *Davis* noted that Davis brought the "action against two officials who were not treating him for his asthma and who were not medically responsible for determining whether his asthma was so serious that he could never be near the use of pepper spray." *Id*. at 91; *see also Riddick v. Kiser*, 2022 WL 17585774, at *5 (W.D. Va. 2022) (where doctor had not flagged asthma as a condition likely to be significantly aggravated by OC spray, nurse could reasonably rely on protocol established by supervising physician); *Barksdale v. Dep't of Corr.*, 2023 WL 8604129, at *2 (W.D. Pa. 2023) ("Use of OC spray is not categorically prohibited in the presence of inmates who suffer from asthma.") (citation omitted); *Pittman v. Pickett*, 2024 WL 1239943, at *8 (D. Colo. 2024) (finding officers entitled to qualified immunity where plaintiff with asthma failed to cite "a clearly established constitutional or statutory right to have the officers in these circumstances ascertain Plaintiff's medical profile before commencing the use of OC spray").

Likewise, Plaintiff has not named any medical providers as defendants or alleged that any defendant was medically responsible for determining whether his medical condition was so serious that he should never be near the use of pepper spray. Although Plaintiff alleges that Dr. Harrod indicated that Johnson "twisted his words," Plaintiff does not allege that Dr. Harrod indicated that Plaintiff should not be around pepper spray, nor does Plaintiff indicate that he has a medical order prohibiting the use of pepper spray in his vicinity. *Cf. Sanchez v. Pescador*, 2019 WL 2602518, at *5 (D. Colo. 2019) (in addressing the subjective prong, finding allegation that officers sprayed him in the face and eyes with OC spray when they were fully aware of the

medial order prohibiting the use of OC spray, along with other allegations, sufficient to state a plausible claim).

Plaintiff alleges no facts showing that a defendant both knew of and disregarded an excessive risk to his health or safety related to the use of pepper spray in the infirmary. Plaintiff should show good cause why his Eighth Amendment claim should not be dismissed for failure to state a claim.

### B. Court Access

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging

"the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

The right to access the courts does not guarantee inmates the right to a law library or to legal assistance, but merely to "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. 350–51 (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)). The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research." *Id*. at 354, 360.

Kansas District Court online records show that Plaintiff filed a K.S.A. 60-1507 action on May 2, 2024, and it remains pending. *See Tran v. State*, Case No. SG-2024-CV-000940 (District Court of Sedgwick County, Kansas). Plaintiff filed a reply in the case on August 19, 2024. *Id*. Plaintiff also filed this § 1983 action regarding the conditions of his confinement, as well as three motions, a declaration, and a memorandum. (Docs. 1 through 6.) Plaintiff has failed to allege an actual injury. Plaintiff should show good cause why his court access claim should not be dismissed for failure to state a claim.

### C. Grievances

Plaintiff alleges that multiple defendants denied his grievances. Plaintiff acknowledges that a grievance procedure is in place and that he used it. Plaintiff's claims relate to his

10

dissatisfaction with responses to his grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

## IV. Motions

### A. Motion for Leave to Proceed In Forma Pauperis (Doc. 2)

Plaintiff filed a motion for leave to proceed in forma pauperis. Plaintiff's motion and financial information show that he is not indigent and is able to pay the filing fee. Therefore, the motion is denied. Plaintiff is granted until December 6, 2024, in which to submit the $405.00 filing fee. The failure to submit the fee by that deadline will result in dismissal of this action without prejudice and without further notice.

### B. Motion for Appointment of Counsel (Doc. 3)

Plaintiff filed a motion seeking appointment of counsel, arguing that he has experienced poor performance from Legal Services for Prisoners and they have a heavy caseload or excessive

requests from other inmates. (Doc. 3, at 2.) He also argues that the merits of his case warrant appointment of counsel. *Id*. Plaintiff alleges that his claims and the number of defendants named makes this case a factually complex case. (Doc. 4, at 2–3.) He also argues that the case will require a medical expert, he has limited ability to investigate the facts, and the case will involve the cross-examination of witnesses. *Id*. at 3–4. He also states that he has limited access to legal materials because he is in the infirmary receiving cancer treatment. *Id*. at 4–5.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3)

Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

### C. Motion for TRO and Preliminary Injunction (Doc. 5)

Plaintiff has filed a motion seeking a temporary restraining order and preliminary injunction. Plaintiff alleges that he was exposed to pepper spray during his cancer treatment and he still has upcoming surgeries and possibly more cancer treatment. (Doc. 5, at 1–2.) He also claims that he has been denied adequate court access. *Id*. at 2. Plaintiff argues that "[i]f he continues to be exposed to pepper spray he will endure additional pain and suffering physically and mentally that will either prolong his recovery or not [sic] able to recover at all." *Id*. at 3.

"The [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

"Except as to notice and duration, the legal standards governing a temporary restraining order ("TRO") and a preliminary injunction are the same." *Vietti v. Welsh & McGough, PLLC*, 2022 WL 1288314, at *2 (N.D. Okla. April 30, 2022) (citing *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.")). "The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration." *Id*. (citing Fed. R. Civ. P. 65(b)).

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a

heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. The motion is denied.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (24-3199-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for leave to Proceed In Forma Pauperis (Doc. 2) is **denied.** Plaintiff is granted until **December 6, 2024**, in which to submit the $405.00 filing fee. The failure to submit the fee by that deadline will result in dismissal of this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's motion (Doc. 5) seeking a temporary restraining order and preliminary injunction is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **December 19, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **December 19, 2024**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated November 19, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE